IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| CAROLYN BROWN, JERRY ZIMMERMANN, THE GAZETTE COMPANY, DUANE C. SPRIESTERBACH, JAMES PETERSON, JOSEPH PETERSON, RAYMOND RIEZMAN, JERRY FULL and CHARLES PETERS, <br><br> Plaintiffs, <br><br> vs. <br><br> THE MCGRAW-HILL COMPANIES, INC., <br><br> Defendant. | No. 06-CV-34-LRR <br><br> **ORDER** |

_____

*TABLE OF CONTENTS*

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    RELEVANT PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    UNDISPUTED MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.    STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . 6
     A.    *Generally* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     B.    *Summary Judgment on Part of a Single Claim* . . . . . . . . . . . . . . . 7

VI.    ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     A.    *Substantive Law of Illinois* . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     B.    *Scope of the Release* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         1.    *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         2.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VII.    DISPOSITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## I. INTRODUCTION

The matter before the court is Defendant The McGraw-Hill Companies, Inc.'s ("McGraw-Hill") Motion for Partial Summary Judgment ("Motion") (docket no. 40).

## II. RELEVANT PROCEDURAL HISTORY

On August 15, 2007, Plaintiffs Carolyn Brown ("Brown"), Jerry Zimmermann ("Zimmermann"), the Gazette Company ("Gazette"), Duane C. Spriesterbach, James Peterson, Joseph Peterson, Raymond Riezman, Jerry Full and Charles Peters ("Peters") (collectively "Plaintiffs") filed a Second Amended and Substituted Complaint and Jury Demand ("Complaint") (docket no. 62) against McGraw-Hill.[1] Although the Complaint does not contain any formal counts, it alleges that McGraw-Hill breached its contractual obligations and violated Iowa Code section 554.1308 (2007).[2]

On April 19, 2007, McGraw-Hill filed the instant Motion. On May 11, 2007, Plaintiffs filed a Resistance to Defendant's Motion ("Resistance"). On May 18, 2007, McGraw-Hill filed a reply ("Reply"). On June 26, 2007, with the court's approval, Plaintiffs filed a supplement to the Resistance.

---

[1] On March 10, 2006, Plaintiffs Brown, Zimmermann and Gazette filed a complaint. On May 23, 2006, McGraw-Hill filed an answer and counterclaim. On June 8, 2006, Brown, Zimmermann and Gazette filed an answer to the counterclaim.
 On October 2, 2006, Plaintiffs Brown, Zimmermann, Gazette, Duane C. Spriesterbach, James Peterson, Joseph Peterson and Raymond Riezman filed an amended complaint and jury demand. On October 12, 2006, McGraw Hill filed an answer, affirmative defenses and counterclaim.
 On April 16, 2007, Brown and Zimmermann filed a motion for summary judgment seeking dismissal of the counterclaim. On May 14, 2007, McGraw-Hill filed a response, in which it conceded that the counterclaim should be dismissed. On May 15, 2007, the court dismissed the counterclaim with prejudice. *See* Order (docket no. 51).

[2] The Complaint actually alleges a violation of Iowa Code section 554.1207 (2006), but that section was transferred to section 554.1308 in 2007. *See* Iowa Code Ann. § 554.1207 (West 2007) ("554.1207. Transferred to § 554.1308 by Acts 2007 (82 G.A.) S.F. 535, § 54.").

2

On August 9, 2007, the court held a hearing on the Motion. Plaintiffs were represented by attorney Patrick M. Roby. McGraw-Hill was represented by attorney Michael McDonough. Finding the Motion to be fully submitted and ready for decision, the court turns to consider it.

### III. JURISDICTION

Plaintiffs invoke this court's diversity jurisdiction because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Brown, Zimmermann, Spriestersbach, James Peterson, Joseph Peterson and Riezman are residents of Johnson County, Iowa. Gazette is an Iowa corporation with its principal place of business in Linn County, Iowa. McGraw-Hill is a New York corporation with its principal place of business in New York, New York. The court is satisfied that it has jurisdiction over this matter.

### IV. UNDISPUTED MATERIAL FACTS

McGraw-Hill is an educational publisher. Brown and Zimmermann founded Breakthrough, Inc. ("Breakthrough") in 1993 to market and sell *Breakthrough to Literacy* ("BTL"), their reading programs and related products and services. On June 2, 1997, Breakthrough executed an Asset Purchase Agreement ("1997 Agreement"), through which The Wright Group purchased all of the assets of Breakthrough. The Wright Group is a division of the Tribune Corporation. The 1997 Agreement provides, in part:

> Buyer shall, in good faith and with reasonable diligence, use commercially reasonable efforts to manufacture, produce, market, and distribute Breakthrough Products and to market, sell and provide Breakthrough Services, subject at all times to Buyer's right to manage its business in its sole and absolute discretion with or without regard to prevailing economic or other business conditions.

1997 Agreement (docket no. 40-5), at ¶ 3.5(b)(1). The 1997 Agreement provides for deferred payments for an eight year period and specifies that the payments are "in no

3

event" to "exceed the aggregate of $16,000,000" for such period. *Id.* at ¶ 3.4(a). Breakthrough was renamed as BTL.

In October 2000, McGraw-Hill purchased assets from the Tribune Corporation that included BTL. McGraw-Hill assumed all of the rights and obligations that had been assumed by The Wright Group in the 1997 Agreement.

In 2003, there was a dispute among the parties regarding the performance of the 1997 Agreement, specifically "regarding which BTL components should be considered revenue generating components under section 3.4(a) of the [1997 Agreement]" for the purposes of computing the payments owed to Plaintiffs. General Release and Settlement Agreement ("Release") (docket no. 49), at ¶ 1(e); *see also id.* at ¶ 2(a) ("Having accepted Wright Group's Methodology, the remaining issue outstanding between BTL Sellers and Wright Group is which BTL Program components should be treated as revenue-generating pursuant to the [1997 Agreement], in addition to those originally included in Exhibit I thereto.").

On October 22, 2003, Defendant entered into a Release with Plaintiffs. The Release was dated September 1, 2003, however it was not signed by Gazette until September 26, 2003, by Brown until September 28, 2003, and by Zimmermann until October 22, 2003. The Release states, in part:

> In consideration hereof, each of Brown, Zimmermann[3] and Gazette, on behalf of all BTL Related Parties[4], hereby waives, releases, acquits and forever discharges each of McGraw-Hill, Wright Group, and all other McGraw-Hill

---

[3] In the Release, Plaintiff Zimmermann's last name is spelled "Zimmerman." The court spells it throughout this order as it is spelled in the Complaint.

[4] "BTL Related Party" and "BTL Sellers" are defined in the Release to include each of the named Plaintiffs, as well as other individuals and corporations. Release (docket no. 49), at ¶ 1(c), ¶ 3(a)(i) & Ex. A. There were twelve BTL Sellers. *Id.* at Ex. A. The term "Seller" in the Release refers to Breakthrough. *Id.* at ¶ 1(a).

4

> Related Parties from any and all actions, causes of action, claims, suits, demands, rights, damages, costs, accounts, judgments, debts, obligations, rights of contribution and indemnity, and any and all liabilities of any kind or of any nature whatsoever, whether at law or in equity, known or unknown, liquidated or unliquidated, foreseeable or unforeseeable, which any BTL Related Party ever had, now has, or may in the future have, against any or all McGraw-Hill Related Parties, as a result of, arising out of, or in the connection with, the McGraw-Hill Related Parties' respective participation in and/or performance of the [1997 Agreement], for the term thereof through and including December 31, 2002. The foregoing release is conditioned upon the receipt by BTL Seller(s) of payment of the Settlement Amount in accordance with Paragraph 3(c) [of the Release].

Release (docket no. 49), at ¶ 3(b). In the portion of the Release captioned "Calculating Deferred Payments," McGraw-Hill agreed to pay $60,845.58

> in full accord, satisfaction, discharge and release of all claims by any Seller Related Party (as herein defined) against any McGraw-Hill Related Party (as herein defined), in respect of all obligations of any McGraw-Hill Related Party pursuant to the [1997 Agreement], for the term thereof through and including December 31, 2002. The parties hereto agree and confirm that the [$60,845.58] constitutes the full, remaining, and correct outstanding amount due and owing to BTL Sellers under the [1997 Agreement] for the period through and including December 31, 2002, and that no other amounts or fees of any sort are, or in the future will be, due to BTL Sellers for such period.

Release (docket no. 49), at ¶ 2(c).

The Release includes Exhibits A, B, C and D. Exhibit A lists the twelve BTL Sellers and the "Total Allocation of Deferred Payments," in terms of each BTL Seller's percentage allocation. *Id.* at Ex. A. In Exhibit B, the parties listed each BTL component that was in existence at the time the Release was executed and that they agreed would be "revenue-generating" under the 1997 Agreement. *Id.* at ¶ 2(b)(i) & Ex. B. In Exhibit C,

5

the parties listed each BTL component in existence that they agreed were non-revenue-generating. *Id.* at ¶ 2(b)(ii) & Ex. C. Exhibit D lists how the $60,845.58 would be divided among the twelve BTL Sellers. *Id.* at ¶ 3(c) & Ex. D.

Zimmermann viewed the Release as a "sort of ministerial agreement about which [BTL] products were to receive royalties" under the 1997 Agreement. Plaintiff's Appendix, at 27.

Sometime in 2003, McGraw-Hill's Bob Simon told Zimmermann that, in 2004, McGraw-Hill would get BTL into ten classrooms in each of ten schools in each of ten districts. In about 2004, Zimmermann and others signed a letter agreement with McGraw-Hill regarding guaranteed payments.

Plaintiffs commenced the instant action on March 10, 2006, seeking damages based on an alleged breach of the 1997 Agreement. Specifically, their dispute concerns Paragraph 3.5(b)(1) of the 1997 Agreement, which is set forth above.

## V. STANDARD FOR SUMMARY JUDGMENT

### A. *Generally*

Summary judgment is appropriate only when the record shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). An issue of fact is "genuine" if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods*, 409 F.3d at 990 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it is a fact "'that might affect the outcome of the suit under the governing law . . . .'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson*, 477 U.S. at 248). In considering a motion for summary judgment, a court must view all facts in the

6

light most favorable to the nonmoving party. *Matsushita Elec. Indus.*, 475 U.S. at 587-88. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* at 587.

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel,* 953 F.2d at 394 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### B. *Summary Judgment on Part of a Single Claim*

Plaintiffs argue that the Motion, which requests an order directing partial summary judgment on the portion of Plaintiffs' claims relating to damages that occurred on or prior to December 31, 2002, is precluded on the basis that partial summary judgment is not available to dismiss particular aspects of single claims. Additionally, Plaintiffs contend that facts cannot be determined for purposes of trial under Federal Rule of Civil Procedure 56(d) unless McGraw-Hill had previously moved for and been denied summary judgment on the entirety of the claims under Rule 56(b). In response, McGraw-Hill argues that the court may grant summary judgment on a portion of a count or a claim pursuant to the plain language of Rule 56(b). McGraw-Hill asserts that partial summary judgment on less than a whole claim is appropriate to narrow the issues for trial and to "facilitate litigation."

The Federal Rules of Civil Procedure should "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. They should also be given their "plain meaning." *Business Guides, Inc. v.*

7

*Chromatic Comm'ns Enters., Inc.*, 498 U.S. 533, 540 (1991). The court's "inquiry is complete" if it finds "the text of the Rule to be clear and unambiguous." *Id.* at 540-41.

In its Motion, McGraw-Hill states that it is moving pursuant to "Federal Rule of Civil Procedure 56(c) . . . ." Rule 56(c) provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Fed. R. Civ. P. 56(c). Rule 56(b) provides that:

> A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all *or any part* thereof.

Fed. R. Civ. P. 56(b) (emphasis added).[5]

The court finds that Rule 56(b) and Rule 56(c) are unambiguous. Rule 56(b) clearly states that a court may grant a summary judgment on all or any part of a claim. Fed. R. Civ. P. 56(b); *see also Moore's Manual—Federal Practice & Procedure*, § 17.26[1] (Lexis 2007) ("Thus, Rule 56 does not require that the court always grant relief to a successful movant that is dispositive of the complete matter in controversy, because the rule anticipates that a court may decide only some of the claims, or even merely parts of claims."); *France Stone Co. v. Charter Twp. of Monroe*, 790 F. Supp. 707, 710 (E.D.

---

[5] New Federal Rules of Civil Procedure will become effective December 1, 2007, "absent contrary Congressional action." *Administrative Office of the United States Courts Amendments to Federal Rules of Civil Procedure* (hereinafter "*Amendments*"), *available at* 2007 US Order 30 (West). The changes to Amended Rule 56 will be "stylistic only." *Id.* at Committee Note to Amended Rule 56. Rule 56(b) will provide: "A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." *Id.*

8

Mich. 1992) (stating that "[Rule 56(a)] clearly states that a motion for summary judgment may be brought on a claim 'or any part thereof'" and concluding that the plaintiff's motion for partial summary judgment was "not procedurally deficient"). *But see Connelly v. Wolf, Block, Schorr & Solis-Cohen*, 463 F. Supp. 914, 919 (E.D. Pa. 1978) ("The Federal Rules of Civil Procedure do not provide for partial summary judgment for a portion of a single claim.").

Plaintiffs argue that Rule 56(d) is inapplicable here. The court agrees. Rule 56(d) imposes a duty on the court to make an order formulating the issues for trial, in the event that the court does not fully adjudicate a case on summary judgment. *See* Fed. R. Civ. P. 56(d). Rule 56(d) provides, in part:

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court . . . shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy . . . . Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

*Id.* 56(d).[6] The Eighth Circuit Court of Appeals has stated that, "if judgment is not

---

[6] Absent Congressional action, under the newly amended Federal Rules of Civil Procedure, discussed *supra* in footnote 5, Amended Rule 56(d) will have two parts, one which provide for "establishing facts" and one which provides for "establishing liability." *See Amendments*, *available at* 2007 US Order 30 (West), at Amended Rule 56(d)(1) and Rule 56(d)(2). Essentially, Amended Rule 56(d)(1) is taken from the current Rule 56(d). It will provide:

> **(d) Case Not Fully Adjudicated on the Motion.**
> (1) *Establishing Facts.* If summary judgment is not rendered
> (continued…)
9

rendered on the whole case and issues remain which must be tried, the court should determine what material facts are in issue and what are not, and should specify the facts which appear without substantial controversy and proceed with the trial . . . ." *Parmalee v. Chicago Eye Shield Co.*, 157 F.2d 582, 585 (8th Cir. 1946); *see also Connelly*, 463 F. Supp. at 919-20 ("Rule 56(d) imposes a duty on a court that does not fully adjudicate a case on a motion for summary judgment to make an order formulating the issues for trial, to the extent practicable."). Here, McGraw-Hill seeks only partial summary judgment, not a "full" summary judgment, that is, it is not seeking a judgment on the whole case. Therefore, the court finds that Rule 56(d) is inapplicable.

In making a ruling on McGraw-Hill's Motion, the court will not be entering "judgment," but, rather will merely be establishing the facts which are not disputed, if any. *See Moore's Manual*, § 17.26[1] ("[I]t is now well-established that a court may 'grant' partial summary 'judgment' that establishes the existence or nonexistence of certain fact, even though no 'true' judgment is entered on a claim."); *see also* Fed. R. Civ. P. 54(b) (authorizing the entry of a judgment on one of the claims in a suit involving more than one claim, but not authorizing a *judgment* on part of a single claim).

---

⁶(…continued)
> on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys. It should then issue an order specifying what facts—including items of damages or other relief—are not genuinely at issue. The facts so specified must be treated as established in the action.
> (2) *Establishing Liability*. An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages.

*Id.* (emphasis in original).

The court finds McGraw-Hill's Motion to be procedurally sufficient. Therefore, it now turns to consider the merits of the Motion under Rule 56(b) and Rule 56(c).

## VI. ANALYSIS

### A. *Substantive Law of Illinois*

The Release states that it "shall be deemed to have been executed and delivered in Illinois and shall be construed and enforced in accordance with the laws of that State." Release (docket no. 49), at ¶ 7. Both parties rely primarily on Illinois law in their briefs and, therefore, implicitly agree that Illinois law is applicable to the dispute. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (determining that federal courts whose jurisdiction is based solely on diversity must apply state, rather than federal, substantive law in order to prevent parties from forum shopping). Therefore, the court will apply the substantive law of Illinois.

### B. *Scope of the Release*

#### 1. *Parties' arguments*

McGraw-Hill argues that it is entitled to partial summary judgment on the portion of the Plaintiffs' claims that cover the time period between October of 2000 until January 1, 2003, that is, the time period between McGraw-Hill's acquisition of BTL until the time indicated throughout the Release. McGraw-Hill contends that it is entitled to partial summary judgment on this part of the claims because the Release is wide in scope and prohibits such claims.

In their Resistance, Plaintiffs allege two related issues regarding the scope of the Release. First, they argue that "the Release dealt specifically with discrete disputes over the categories and methodology for determining 'revenue generating components' under the [1997 Agreement], not any other or future disputes between the parties." Resistance (docket no. 48-2), at 3. In other words, Plaintiffs argue that the Release was limited to far less subject matter than McGraw-Hill alleges. Second, Plaintiffs contend that the Motion

11

fails because McGraw-Hill has not shown that Plaintiffs knew of the instant claims at the time they signed the Release.

In its Reply, McGraw-Hill argues that the Release "intended to release [McGraw-Hill] from any claims regarding royalty payments before December 31, 2002[,] and [that] the claims were in the contemplation of the parties at the time they entered into the [Release], as evidenced by the unambiguous terms of the [R]elease. . . ." Reply (docket no. 52-1), at 5.

### 2.     *Conclusion*

"A release is a contract whereby a party abandons a claim to the person against whom the claim exists." *Fuller Family Holdings, LLC v. N. Trust Co.*, 863 N.E.2d 743, 753 (Ill. App. Ct. 2007). "A release is a contract, and therefore is governed by contract law." *Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991). Illinois courts follow the "four corners rule," which requires that, when an agreement is reduced to writing, it "'must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.'" *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (quoting *W. Ill. Oil Co. v. Thompson*, 186 N.E.2d 285 (1962)); *see also Whitlock*, 581 N.E.2d at 667 ("The intention of the parties to contract must be determined from the instrument itself, and construction of the instrument where no ambiguity exists is a matter of law."); *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984) ("Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids."). "A contract will be considered ambiguous if it is capable of being understood in more sense than one." *Whitlock*, 581 N.E.2d at 667.

"General words of release are restrained in effect by the specific recitals contained in the document." *Fuller Family Holdings*, 863 N.E.2d at 753. "[W]here a release

contains words of general release in addition to recitals of specific claims, the words of general release are limited to the particular claim to which reference is made." *Carona v. Ill. Cent. Gulf R.R. Co.*, 561 N.E.2d 239, 242 (Ill. App. Ct. 1990). "Releases are strictly construed against the benefitting party and must spell out the intention of the parties with great particularity." *Fuller Family Holdings*, 863 N.E.2d at 753. The intention of the parties "is discerned from the release's express language as well as the circumstances surrounding the agreement[,]" *id.*, but "a court initially looks to the language of a contract alone," *Air Safety*, 706 N.E.2d at 884. *See Carlile v. Snap-On Tools*, 648 N.E.2d 317, 321 (Ill. App. Ct. 1995) ("The intention of the parties controls the scope and effect of a release, and this intent 'is discerned from the language used *and the circumstances of the transaction*.'" (quoting *Carona*, 561 N.E.2d at 242) (emphasis added in *Carlile*)).

The court must first consider the express language of the Release. The Release contains language that is typical of a general release. It states that Brown, Zimmermann and Gazette, on behalf of all of the Plaintiffs and others, "release[] . . . [McGraw-Hill] . . . from any and all actions . . . and any and all liabilities of any kind or of any nature whatsoever, . . . known or unknown, . . . foreseeable or unforeseeable, . . . as a result of, arising out of, or in connection with, the McGraw-Hill Related Parties' respective participation in and/or performance of the [1997 Agreement], for the term thereof through and including December 31, 2002." Release (docket no. 49), at ¶ 3(b). The document refers to itself as a "general release." *Id.* at ¶ 4. However, the Release also contains references to a specific claim. First, within the general release paragraph cited above, the parties refer to the "participation in and/or performance of the Purchase Agreement." *Id.* at ¶ 3(b). Second, the parties drafted and signed the Release in the instant case because of a specific dispute between Plaintiffs and McGraw-Hill regarding "which BTL components should be considered revenue generating components under

13

section 3.4(a) of the [1997 Agreement.]" *Id.* at ¶ 1(e).[7] They detailed that the "remaining issue" that the Release sought to resolve was "which BTL Program components should be treated as revenue-generating pursuant to the [1997 Agreement], in addition to those originally included in Exhibit I thereto." *Id.* at ¶ 2(a). The Release includes Exhibits A, B, C and D. In Exhibit B, the parties listed each component, which they agreed would be "revenue generating" under the 1997 Agreement. *Id.* at Ex. B. In Exhibit C, the parties listed the agreed upon non-revenue-generating components. *Id.* at Ex. C. In addition to an agreement that McGraw-Hill owed Plaintiffs and others money for the revenue generating components for the period prior to December 31, 2002, the parties agreed as to how future deferred payments due under the 1997 Agreement would be calculated. *See id.* at ¶ 2(d).[8] Moreover, in the portion of the Release captioned "Calculating Deferred Payments," McGraw-Hill agreed to pay $60,845.58 to the Plaintiffs and others, as set forth in Exhibit D to the Release,

> in full accord, satisfaction, discharge and release of all claims by [Plaintiffs] against [McGraw-Hill], in respect of *all obligations* of any McGraw-Hill Related Party pursuant to the [1997 Agreement], for the term thereof through and including December 31, 2002. The parties hereto agree and confirm that the [$60,845.58] constitutes the full, remaining, and correct

---

[7] Plaintiffs characterize the dispute as also involving disagreement over the methodology used to determine the deferred payments. *See* Resistance (docket no. 48-2), at 4 ("In this case, the Release expressly provided that it was resolving a dispute 'regarding which BTL components should be considered revenue generating components under section 3.4(a) of the [1997] Agreement' and the 'methodology in applying the [1997] Agreement's revenue provisions to BTL components . . . .'"). However, the Release clearly states that the "[m]ethodology is not in dispute." Release (docket no. 49), at ¶ 1(f).

[8] The court notes that the Release appears to have two paragraphs which are numbered "2(d)." The court is referring to the Paragraph 2(d) which begins at the bottom of page 3 of Plaintiffs' Appendix and which contains three subparagraphs.

14

> outstanding amount due and owing to BTL Sellers under the [1997 Agreement] for the period through and including December 31, 2002, and that no other amounts or fees of any sort are, or in the future will be, due to BTL Sellers for such period.

*Id.* at ¶ 2(c) (emphasis added).

The language in the Release is clear and unambiguous. It indicates that the scope of the Release extends beyond the particular dispute that prompted the Release. In the instant case, Plaintiffs are attempting to recover damages that they allegedly sustained as a result of McGraw-Hill's breach of its duty to perform under the 1997 Agreement. The Release clearly states, both in the "Calculating Deferred Payments" section and in the "Release" section, that it precludes such claims pertaining to McGraw-Hill's performance and obligations under the 1997 Agreement. The Release was signed by Plaintiffs well-after the end of the release period, that is, Gazette signed it on September 26, 2003, Brown signed it on September 28, 2003, and Zimmermann signed it on October 22, 2003. The court must enforce the Release as the parties have written it. *See Fuller Family Holdings*, 863 N.E.2d at 753 ("Where the terms of the release are clear and explicit, the court must enforce them as written, and construction of the instrument is a question of law.").

Plaintiffs argue that, at the time they signed the Release, they did not contemplate the claims in the Complaint. And, it is true that, under Illinois law, "[w]here a releasing party was unaware of other claims, Illinois law restricts the release to the particular claims that are explicitly covered by the agreement." *Id.*; *see Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 762 (Ill. App. Ct. 2003) ("A release, however, will not 'be construed to include claims not within the contemplation of the parties.'" (quoting *Carlile*, 648 N.E.2d at 321)).

Plaintiffs' argument must fail for two reasons. First, the Release only forecloses their claims for events which occurred several months in advance of the date they signed the Release. The Release exonerates McGraw-Hill of liability for a certain time period and

15

for certain acts that were within the contemplation of the parties, as witnessed by the words in the Release. *Cf. Fuller Family Holdings*, 863 N.E.2d at 753 ("[A] release will not be construed to defeat a valid claim that was not within the contemplation of the parties at the time the agreement was executed, and general words of release are inapplicable to unknown claims."); *Thornwood*, 799 N.E.2d at 763 (explaining that the release contained "sweeping language which [made] it very general" like the fact that it purported to release all claims of any sort that had "occurred from the beginning of time until" the date the release was executed). Plaintiffs cannot now argue that they did not contemplate claims against McGraw-Hill for its performance of the 1997 Agreement, specifically Paragraph 3.5(b)(1), prior to December 31, 2002, because that is the precise subject of the Release. *See* Release (docket no. 49), at ¶ 3(b) (releasing McGraw-Hill of liability for its "participation in and/or performance of the [1997 Agreement]"). This is a release which "makes clear on its face what claims were within the contemplation of the parties at the time the release was given." *Thornwood*, 799 N.E.2d at 762.

The second reason Plaintiffs' argument fails is because they have presented no evidence which shows a dispute of material facts regarding the circumstances surrounding the execution of the Release and their intentions. *See Carlile*, 648 N.E.2d at 321 (requiring courts to examine the language used in the release *and* the "circumstances" surrounding the transaction). Plaintiffs point to Zimmermann's affidavit and argue that the Plaintiffs believed the Release was merely a "ministerial agreement about which [BTL] products were to receive royalties." Plaintiff's Appendix, at 27. They argue that they did not intend to release McGraw-Hill from all of its obligations on the 1997 Agreement, because, at around the same time, Bob Simon promised to get BTL into ten classrooms in each of ten schools in each of ten districts. Plaintiffs also argue that "[McGraw-Hill] has not offered any evidence that there was any discussion about its obligations under

16

Paragraph 19[9] before the Release was signed." Resistance (docket no. 48-2), at 5. In considering the Motion, the court must believe that Zimmermann intended the Release to be a ministerial contract regarding royalties. However, even accepting that fact as true, the court finds that there is no genuine issue of material fact as to the parties' intent as to the sweeping impact of the Release. The undisputed facts show that Bob Simon's statement to Zimmermann about his sales abilities did not pertain to the period before December 1, 2002. In fact, the evidence shows that the conversation took place sometime in 2003 and pertained to future sales.

From the face of the Release, it is clear that the parties intended to cap McGraw-Hill's liability as to the 1997 Agreement and as to a specific period of time. The parties agreed that, between the time the 1997 Agreement was executed and December 31, 2002, Plaintiffs and the other Sellers were not receiving all of the revenue due to them under the 1997 Agreement. The court concludes that the Release "spell[s] out the intention of the parties with great particularity." *Fuller Family Holdings*, 863 N.E.2d at 753. There is no genuine issue of material fact remaining regarding the parties' intentions. The Release bars Plaintiffs from asserting their cause of action or seeking damages for McGraw-Hill's obligations under the 1997 Agreement for the period of time through and including December 31, 2002.

Accordingly, the court shall grant McGraw-Hill's Motion. Plaintiffs shall neither hold McGraw-Hill liable nor recover damages for the period of time up to and including December 31, 2002.

---

[9] Although Plaintiffs refer to "Paragraph 19," the court assumes they are referring to Paragraph 3.5(b)(1) of the 1997 Agreement, which appears on pages 19 and 20 of the 1997 Agreement, because Paragraph 3.5(b)(1) is at the crux of their Complaint. *See* Complaint (docket no. 62), at ¶ 19.

## VII. DISPOSITION

For the foregoing reasons, the court hereby **ORDERS** the following:

(1) McGraw-Hill's Motion for Partial Summary Judgment (docket no. 40) is **GRANTED**;

(2) In this partial adjudication, the court finds that Plaintiffs are barred from asserting their claims in the Complaint (docket no. 62), insofar as they seek to hold McGraw-Hill liable or collect damages for the period of time through and including December 31, 2002; and

(3) This case will proceed to trial as previously scheduled, that is, "at some time during the two-week period beginning on September 17, 2007" (*see* docket no. 11), on the remainder of Plaintiffs' claims.

**IT IS SO ORDERED.**

**DATED** this 29th day of August, 2007.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA